IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **WENDELL D.[1]**, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 7:17CV364 |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Wendell D. ("Wendell") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Wendell alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) weigh the opinion of his treating physician; and (2) assess the consistency of Wendell's complaints about his symptoms with the evidence.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Wendell's Motion for Summary Judgment (Dkt. No. 13) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 15).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

support the Commissioner's conclusion that Wendell failed to demonstrate that he was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Wendell filed for SSI and DIB in May 2013, claiming that his disability began on April 1, 2011, due to cardiomyopathy, chest pain, fatigue, shortness of breath, lightheadedness, tachycardia, anxiety, and depression. R. 183–85, 249. Wendell's date last insured was December 31, 2016; thus he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB.[3] R. 55; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Wendell's applications at the initial and reconsideration levels of administrative review. R. 55–65, 66–76, 79–90, 91–102. On June 29, 2016, ALJ Thomas W. Erwin held a hearing to consider Wendell's claims for SSI and DIB. R. 33–54. Counsel represented Wendell at the hearing, which included testimony from vocational expert Asheley Wells. On August 2, 2016, the ALJ entered his decision

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] The ALJ indicates that Wendell's date last insured was March 31, 2018. R. 15. However, elsewhere in the record, Wendell's date last insured is indicated as December 31, 2016. R. 55, 79, 91, 273.

2

analyzing Wendell's claims under the familiar five-step process[4] and denying his claim for benefits.[5] R. 15–27.

The ALJ found that Wendell was insured at the time of the alleged disability onset and that he suffered from the severe impairments of cardiomyopathy, congestive heart failure, mitral regurgitation, osteoarthritis of the shoulder, and gastroesphageal reflux disease ("GERD").[6] R. 18. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 18. The ALJ specifically considered listing 1.02 (major dysfunction of a joint), 4.02 (chronic heart failure), and 5.01 (digestive system). Id.

The ALJ concluded that Wendell retained the residual functional capacity ("RFC") to perform light lifting, but sedentary standing and walking. R. 19. Further, he can only occasionally climb, balance, kneel, stoop, crouch, crawl, reach overhead with the right arm, and tolerate exposure to extreme heat. Id. The ALJ determined that Wendell was unable to perform his past relevant work as a window assembler, forklift operator, restaurant owner, fishing guide, and furniture sales clerk, but that he could perform jobs that exist in significant numbers in the national economy, such as addressing clerk, assembler, and weight tester. R. 26–27. Thus, the

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[5] Wendell was 35 years old on the alleged disability onset date, making him a younger person under the Act. R. 26.

[6] The ALJ determined that Wendell's anxiety and depression are non-medically determinable impairments. R. 18.

3

ALJ determined that Wendell was not disabled. R. 27. Wendell appealed the ALJ's decision and the Appeals Council denied his request for review on June 2, 2017. R. 1–3.

## ANALYSIS

Wendell alleges that the ALJ failed to properly: (1) weigh the opinion of his treating physician Andrew Maiolo, M.D. and (2) assess the consistency of Wendell's complaints about his symptoms with the evidence of record.

**A. Medical History**

Wendell was assessed with cardiomyopathy, a disease of the heart muscle, shortly prior to his alleged onset date in April 2011, and has had regular office visits with his treating cardiologists and been prescribed medication for his condition.[7] R. 313–14. In June 2011, Wendell reported he was "generally getting along fairly well" and his treating cardiologist Krish Ramachandran, M.D noted Wendell's "history of dyspnea [shortness of breath] on moderate exertion consistent with New [York Heart Association ("NYHA")[8]] class II heart failure," and advised him against engaging in any sudden bursts of activity. R. 312. An echocardiogram in December 2011 showed Wendell's overall systolic function was mildly reduced with an estimated left ventricular ejection fraction of 45–50%. R. 707. A second echochardiogram in November 2013 showed that his overall left ventricular ejection fraction was 50-55%. R. 588. Wendell continued with regular follow-up visits to a cardiologist through 2016, and in November 2013, May and November 2014, and May 2015, his NYHA class II congestive heart failure was unchanged. R. 582, 624, 631, 648. Echocardiograms in February 2014 and August 2015, showed

---

[7] In cardiomyopathy, the heart muscle becomes enlarged, thick, or rigid; as the disease worsens, the heart becomes weaker. See https://www.nhlbi.nih.gov/health-topics/cardiomyopathy.

[8] The New York Heart Association functional classification (NYHA class) is often used to describe the functional capacity of adults with congenital heart disease, and has four classes based on limitations during physical activity. See http://www.heart.org/en/health-topics/heart-failure/what-is-heart-failure/classes-of-heart-failure

left ventricular ejection fractions of 46% and between 35-45%, respectively. R. 587, 669. In September 2015, Matthew Bowles, PA-C, assessed Wendell as having a history of "significant fatigue and shortness o[f] breath with exertion with class III/IV heart failure by NYHA." R. 697. However, Wendell denied any "recent angina symptoms." Id.

   1. Medical Opinion Evidence

State agency physicians Richard Surrusco, M.D., and Bert Sptezler, M.D., in December 2013 and June 2014, respectively, reviewed the record and both found that Wendell could occasionally lift and carry up to 20 pounds, frequently lift and carry up to 10 pounds, stand and walk two hours and sit six hours in an eight hour workday, with some postural limitations.[9] R. 61–62, 86–87.

In August 2014 and 2015, Dr. Ramachandran completed Cardiac Residual Functional Capacity Questionnaires. R. 614–20, 657–63. In both assessments, Dr. Ramachandran found Wendell had cardiomyopathy NYHA class II, and was capable of standing and walking for six hours in a workday, with certain postural and environmental limitations. Id. On November 11, 2015, Dr. Maiolo likewise completed a Cardiac Residual Functional Capacity Questionnaire and found Wendell had cardiomyopathy NYHA class II/III, and was capable of standing and walking for six hours in a workday with certain postural and environmental limitations. R. 671–77. Dr. Maiolo also found that Wendell would need to rest during the workday by lying down one hour per day, and would likely miss work about twice a month. R. 675, 677.

In February 2016, John A. Pella, M.D. responded to medical interrogatories as an impartial medical expert, where he diagnosed Wendell, among other things, with idiopathic cardiomyopathy with variable dyspnea and fatigue, but found he did not meet a listing. R. 679–

---

[9] State agency psychologists Stephanie Fearer, Ph.D., and David Deaver, Ph.D., both found no medically determinable mental impairments. R. 60, 85.

5

681. Dr. Pella completed a medical source statement of ability to do work-related activities (physical) where he indicated that Wendell could sit for eight hours, stand for three hours, and walk for two hours over an eight hour work day, and also imposed postural and environmental limitations. Id.

### B. Treating Physician's Opinion

Wendell argues that the ALJ's decision to reject Dr. Maiolo's opinions regarding resting and absences is not supported by substantial evidence. Dr. Maiolo's opinion indicated that Wendell could perform a limited range of light work, but would need to rest by lying down or reclining for one hour during the workday, and would be absent about twice a month due to his impairments. The commissioner states an "ALJ is not required to accept a physician's opinion uncritically" and that substantial evidence supports the ALJ's decision to discount part of Dr. Maiolo's opinion. D's Br. at 11, Dkt. No. 16.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."[10] 20 C.F.R. § 404.1527(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (noting that "the ALJ is supposed to consider whether a medical opinion is consistent, or inconsistent, with other evidence in the record in deciding what weight to accord the opinion"). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater,

---

[10] The social security regulations regarding the evaluation of medical opinion evidence have been amended for claims filed after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c (setting out rules for claims filed on or after March 27, 2017, including that no specific evidentiary weight, including controlling weight will be given to any medical opinions). However, as this claim was filed prior to the effective date of the amended rule, I will apply the rules in 20 C.F.R. §§ 404.1527(c), 416.927.

76 F.3d 585, 590 (4th Cir. 1996). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D.Va. Dec. 29, 2010).

Here, the ALJ appropriately considered these factors and the record, in determining the weight to give to the opinion of Dr. Maiolo. The ALJ gave wrote:

> [Dr.] Maiolo provided a medical source statement indicating a light residual functional capacity. Specifically, Dr. Maiolo indicated [Wendell] could lift and carry 20 pounds occasionally and 10 pounds frequently, and stand and walk for six hours in and eight-hour workday with environmental limitations. Dr. Maiolo further advised [that Wendell] required lying down one hour during an eight-hour workday and he would likely be absent from work about twice a month. [I] accord significant weight to this opinion as consistent with the medical evidence of record as a whole in determining [Wendell's] capacity for less than light exertional work like activities. However, [I] do not adopt the "lying down one hour" and "absent from work about twice a month" as unsupported by the medical evidence of record as a whole.

R. 23. As Wendell emphasizes, the ALJ did not then point to specific portions of the record to support his decision to discount a portion of Dr. Maiolo's opinion. However, reading the ALJ's decision as a whole, the ALJ's analysis of the medical record elsewhere in the opinion provides adequate support for his statement that the record "as a whole" does not mandate Dr. Maiolo's restrictions. See Vincent v. Colvin, Case No. CV 4:15-02867-MGL, 2016 WL 7473429, at *2

7

(D.S.C. Dec. 29, 2016) (noting multiple instances when, the ALJ "could have done a better job explaining his decision" but the court was still able to affirm an appeal "when the opinion was read as a whole"). Here, the ALJ discussed Wendell's medical history in detail, including his diagnosis of cardiomyopathy and NYHA class II, and his complaints of chest pain, palpitations and shortness of breath, but with multiple unremarkable physical examinations. R. 22.

Further, the ALJ accorded "significant weight" to the opinion of Dr. Ramachandran, also a treating physician, who like Dr. Maiolo, diagnosed a "NYHA class II indicating mild symptoms" and concluded Wendell was capable of a limited range of light work.[11] However, Dr. Ramachandran's opinion conflicted with Dr. Maiolo's in that Dr. Ramachandran determined Wendell would likely be absent from work only once a month and would not need to rest during the workday. R. 23, 618; see Linda T. v. Berryhill, No. 7:17-CV-105, 2018 WL 4431436, at *3 (W.D. Va. Sept. 17, 2018) (rejecting a requirement that an ALJ "must explain explicitly the rejection of a single limitation [in a medical source's opinion], especially where there are other medical opinions that provide substantial evidence to support the RFC"). Dr. Ramachandran, as Wendell's treating cardiologist since at least 2011, had treated him on many occasions prior to completing Cardiac Residual Functional Capacity Questionnaires in 2014 and 2015.  R. 313. In comparison, as pointed out by Wendell in his brief, Dr. Maiolo saw Wendell three times, in August, September and November 2015, prior to completing the Cardiac Residual Functional Capacity Questionnaire in November 2015. Pl.'s Br. at 6, Dkt. No., 14. Thus, the ALJ was confronted with partially conflicting opinions between two treating physicians, Dr. Ramachandran and Dr. Maiolo, and chose to credit Dr. Ramachandran's opinion that Wendell did not require rest during the workday, and would not miss two days of work a month. See Craig, 76 F.3d 585 (noting that if a doctor's opinion is inconsistent with other substantial

---

[11] Dr. Maiolo diagnosed NYHA class II/III.  R. 671–77.

evidence, it should be accorded significantly less weight). This choice has adequate support in the record. The ALJ wrote regarding Dr. Ramachandran that his opinions merited significant weight, as they were consistent with the record evidence, which "supports [Wendell's] capacity for sedentary exertional work like activities." R. 23.

Wendell also points to Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251 (2017) to support his argument that the ALJ "should have given controlling weight to all of Dr. Maiolo's opinions" under the factors outlined in 20 CFR 404.1527(c). Pl.'s Br. at 5–6, Dkt. No. 14. However, unlike in Brown, the ALJ here did not fail to consider any doctor's opinions, or wrongly credit a psychiatric medical expert's testimony over the "consistent opinions of [five] treating and examining sources" who found disabling physical limitations. Brown, 873 F.3d at 266. Indeed, even Dr. Maiolo, did not conclude that Wendell could not work, but rather "provided a medical source statement indicating a light [RFC]." R. 23.

The ALJ adequately considered the factors outlined in 20 C.F.R. § 416.927(c)(2) and justified the weight afforded with specific reasons, including that Dr. Maiolo's findings on rest and absences were unsupported by the medical evidence. R. 23; See Hendrix v. Astrue, 2010 U.S. Dist. LEXIS 90922, at *7–8, 2010 WL 3448624 (D.S.C. Sept. 1, 2010) ("[A]n express discussion of each factor is not required as long as the ALJ demonstrates that he applied the § 404.1527(d) factors and provides good reasons for his decision."); Overcash v. Astrue, 2010 U.S. Dist. LEXIS 141695, at *16–17 (W.D.N.C. May 21, 2010).

The ALJ considered the opinions of all the treating and reviewing doctors, together with the evidence in the record, and determined that Wendell was capable of performing light lifting, but sedentary standing and walking. This is the ALJ's job: to review the medical evidence of record, weigh the medical opinions, and determine an RFC that represents Wendell's functional

9

capacity. Having reviewed the record as a whole, I conclude that substantial evidence supports the ALJ's decision to discount the opinion of Dr. Maiolo regarding Wendell's required rest and absences.

### C. Subjective Complaints of Limitations

Wendell argues that the ALJ's assessment of his allegations regarding his limitations is not supported by substantial evidence. Specifically, Wendell complains that the activities of daily living the ALJ referenced to support his finding that Wendell is not disabled do not actually show he is capable of completing an eight hour workday, especially as Wendell often needs to stop to rest when performing these activities, due to shortness of breath. Wendell emphasizes that he performs these activities at his own pace, often with assistance from others, and points out that he works only one day per week for four hours as a self-employed fishing guide. Pl.'s Br. at 10, Dkt. No. 14. The Commissioner counters that the ALJ appropriately applied the two-step analysis in evaluating Wendell's subjective symptoms.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims,[12] SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c).[13]

---

[12] In March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016). I note that Wendell's brief persists in its use of the term "credibility," despite that SSR 16-3 was issued prior to the ALJ's consideration of Wendell's claim and the ALJ's opinion speaks in terms of analyzing "consistency." However, I will consider Wendell's argument in any event, as the methodology required by both SSR 16-3P and SSR 96-7P, are quite similar, requiring the ALJ to assess Wendell's report of his own symptoms against the backdrop of the entire case record.

[13] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[14] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

The ALJ's opinion includes a detailed consideration of Wendell's medical history, along with a discussion of Wendell's allegations, and the ALJ adequately supported his finding that Wendell's allegations were not entirely consistent with the record evidence. The ALJ wrote that:

> [Wendell's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Wendells] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

R. 24. The ALJ noted Wendell's testimony regarding his limitations, including that he gets fatigued every day, has chest pain and palpitations with overexertion such as walking steps, and lies down twice a day for one hour in the middle of the day, and for two hours in the evening. R. 19–20. The ALJ also acknowledged that Wendell "clearly has a serious heart condition with

---

[14] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

low ejection fractions," but concluded he is still not precluded from sedentary work. Id. In support of his finding, the ALJ noted that Wendell's activities of daily living in his function report are much broader then his testimony, where we stated he performs essentially no activities of daily living. The ALJ referenced, as examples, an emergency department note from 2011, where Wendell was cutting grass and his cardiomyopathy was stable, that Wendell works part-time as a fishing guide, and that Wendell can perform independent personal care, take medications, prepare simple meals, do laundry and dishes, drive, shop, pay bills, fish, and spend time and with his girlfriend, mother and daughter. R. 25.

Wendell points to Brown, 873 F.3d 251, to support his argument that the ALJ fails to acknowledge "that the activities of [Wendell] he cited are very limited and performed by [Wendell] on a very limited and intermittent basis." However, this case is distinguished from Brown, where the Fourth Circuit concluded that the ALJ had committed multiple errors, including failing to acknowledge the extent of the daily activities of living, writing:

> With respect to the first reason for the adverse credibility finding, the ALJ noted that Brown testified to daily activities of living that included "cooking, driving, doing laundry, collecting coins, attending church and shopping." See Second ALJ Decision 11. The ALJ did not acknowledge the extent of those activities as described by Brown, e.g., that he simply prepared meals in his microwave, could drive only short distances without significant discomfort, only occasionally did laundry and looked at coins, and, by the time of the second ALJ hearing, had discontinued regular attendance at church and limited his shopping to just thirty minutes once a week. Moreover, the ALJ provided no explanation as to how those particular activities—or any of the activities depicted by Brown—showed that he could persist through an eight-hour workday.

873 F.3d at 263. While, here, as asserted by Wendell, the ALJ did mention in his opinion some activities of daily living that arguably do not show that Wendell could "persist through an eight hour workday," unlike in Brown, the ALJ pointed to more than those daily activities to discount Wendell's testimony at the hearing, including the record of his treatment and objective medical

12

evidence.[15] In addition to his activities of daily living, The ALJ noted that Wendell's allegations were inconsistent with his medical records, including multiple unremarkable findings on examination and NYHA class II, "which is defined as mild symptoms," as well as plaintiff's doctors, none of whom concluded he could not perform any work. R. 24–25. The ALJ specifically wrote that, among other things, he based his determination on Wendell's own statements of his activities, the degree of medical treatment required, his demeanor at the hearing, his medical history, findings on examination, and the reports of the reviewing, treating, and examining physicians. R. 24–25. Further, the ALJ may properly rely on evidence regarding a plaintiff's routine, non-work activities in rejecting a claim of disability. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005).

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Wendell's subjective complaints with substantial evidence, and that Wendell is capable of performing work at the level stated in the ALJ's opinion.

## **CONCLUSION**

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the

---

[15] Also, unlike in Brown, the ALJ here did not fail to consider any doctor's opinions, or wrongly credit a psychiatric medical expert's testimony over the "consistent opinions of [five] treating and examining sources" who found disabling physical limitations. Brown, 873 F.3d at 266.

defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: January 9, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge